UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| BELINDA G. STEPHENS and LENA VAUGHT,<br><br>    Plaintiffs,<br><br>V.<br><br>GENERAL ELECTRIC COMPANY,<br><br>    Defendant. | Case No. 6:16-cv-00115-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Belinda G. Stephens and Lena Vaught believe they were discriminated against when General Electric terminated their employment in August of 2014. As explained below, this termination was a reduction in force, and Stephens and Vaught have not identified facts that establish a prima facie case for employment discrimination. Even if they could, Stephens and Vaught have not demonstrated that the legitimate, non-discriminatory reasons for the termination offered by General Electric are pretextual. For that reason, General Electric's request for summary judgment is **GRANTED**.

**I**

Defendant General Electric hired both Plaintiffs Belinda Stephens and Lena Vaught as Standardizers (R4 classification) on November 26, 2011 to work in General Electric's Somerset Glass Plant. [R. 53-6; R. 53-7; R. 80 at 4.] In August of 2014, General Electric placed several hourly employees, including Ms. Stephens and Ms. Vaught, on "layoff status." [R. 53-3 at 58; R. 53-4 at 5.] While General Electric experienced several incidences of layoffs during the course of its operations, the current claims of Ms. Stephens and Ms. Vaught only relate to the August

2014 layoff. [R. 53-3 at 59; R. 53-4 at 32–33.] This layoff eliminated ten hourly positions, four of which were R4 positions. [R. 53-15 at 17–18.] It also began a complicated process of "bumping" senior employees into lower job classifications, in other words, a laid off employee with a higher classification, such as R23, "bumps" a more junior employee in a lower position, such as R10, as long as he/she was qualified for the R10 position. Six R4 employees and four R5 employees were placed on layoff status. [R. 53-1 at 9.] The six laid off R4 employees were all women over the age of 40 (Sandra Dancy, age 62; Gaitha Flynn, age 60; Trulayne Mink, age 55; Linda Price, age 57; Belinda Stephens, age 58; and Lena Vaught, age 58). The four R5 employees were all male (James Gilmore, age 49; Aaron Irvine, age 31; John Linkes, age 44; and David Pitman, age 57). *Id.* However, though General Electric did ultimately lay off the six female R4 employees, General Electric "deferred layoff" for the four male R5 employees in order to fill R5 and R4/R5 positions that were vacant prior to the August 2014 layoff and to maintain temporary employees. *Id.* at 10. Gilmore and Irvine both served in Associate Press Operator (APO) and/or Press Operator (PO) positions prior to the creation of additional R4/R5 positions, and neither Gilmore nor Irvine seem to have retained their APO and/or PO duties in addition to the R4/R5 positions. [R. 53-1 at 9.] According to documents submitted by General Electric, PO is a classification of R18, and APO is a classification of R12. [*See* R.53-19 at 1.] General Electric claims that these four men were retained on a temporary basis for both R5 and R4/R5 positions. [R. 53-1 at 10.]

During the August 2014 termination, General Electric retained four existing R4/R5 positions and created two additional R4/R5 positions. [R 53-15 at 8.] At that time, two of the four retained R4/R5 positions were occupied (by James Wesley, Male, age 51, and Barbara Wilson, Female, age 53) and two were "vacant." *Id.* In the course of the August 2014

2

termination, General Electric filled the two vacant positions with Dan Stogsdill (Male, age 54) and Marty Wilson (Male, age 54), pursuant to the collective bargaining agreement. General Electric placed Tony Burris (Male, age 54) and Hank Petrey (Male, age 54) into the two newly-created R4/R5 positions also consistent with the collective bargaining agreement. *Id.* General Electric's personnel files indicate that Burris already worked in the R4/R5 position as of January 2, 2013, and therefore already performed the duties associated with the R4 and R5 positions in August of 2014. [R. 80-12.] The personnel files also reflect that Petrey held an R12 position of APO when General Electric created the new R4/R5 position. [R. 80-13.] The files do not suggest Petrey continued his R12 duties in addition to the R4/R5 duties. *Id.*

Ms. Stephens and Ms. Vaught filed an EEOC claim in 2015 [R. 80-8 at 5] before bringing this action in 2016 [R. 1]. They allege age and gender discrimination, claiming General Electric violated Title VII and KRS Chapter 344 by terminating their employment. [R. 1.] General Electric filed a motion for summary judgment claiming (1) the termination of Ms. Stephens's and Ms. Vaught's employment was a reduction in force as a matter of law; (2) Ms. Stephens and Ms. Vaught cannot establish a prima facie case of age discrimination or gender discrimination under the heightened standard applicable to a reduction in force; and (3) even if they could establish a prima facie case, Ms. Stephens and Ms. Vaught could not show that General Electric's non-discriminatory business reason for the reduction in force was somehow pretextual. [R. 53-1 at 1.] Ms. Stephens and Ms. Vaught responded, alleging issues of material fact as to each of these claims. [R. 80.]

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

3

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a

genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

Ms. Stephens and Ms. Vaught allege General Electric violated their rights under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and/or the Kentucky Civil Rights Act, KRS § 344.450 which, among other things, prohibits employers from discharging employees on the basis of either sex or age (40 years or older). Ky. Rev. Stat. Ann. § 344.040(1). Age discrimination claims brought under the Kentucky Civil Rights Act ("KCRA") are analyzed under the same framework used to analyze similar federal claims. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008) ("Claims brought under the KCRA are 'analyzed in the same manner' as ADEA claims.") (*citing Harker v. Fed. Land Bank of Louisville,* 679 S.W.2d 226, 229 (Ky. 1984)). "ADEA claims are in turn analyzed under the same framework as that employed under Title VII." *Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 670 (6th Cir. 2011) (*citing Grosjean v. First Energy Corp.,* 349 F.3d 332, 335 (6th Cir. 2003)). Similarly, because the Kentucky Civil Rights Act "mirrors Title VII of the Civil Rights Act of 1964, [gender] discrimination claims under the KCRA are to be evaluated using the federal standard of gender discrimination." *Bargo v. Goodwill Indus. of Kentucky, Inc.*, 969 F. Supp. 2d 819, 825 (E.D. Ky. 2013) (*citing Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir. 2000)).

A plaintiff may prove both age and gender discrimination through the use of either direct or circumstantial evidence. *Geiger v. Tower Automotive,* 579 F.3d 614, 620 (6th Cir. 2009); *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012). "Direct evidence

5

of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger*, 579 F.3d at 620 (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id.* In this case, neither Ms. Stephens nor Ms. Vaught have produced any direct evidence of discrimination, nor do they argue direct evidence exists; thus, Ms. Stephens and Ms. Vaught bear the burden of proving a circumstantial case.

When a plaintiff seeks to prove intentional discrimination with circumstantial evidence, a burden shifting framework applies, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Geiger*, 579 F.3d at 621; *see also Blizzard v. Marion Technical Coll.,* 698 F.3d 275, 283 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2359 (2013). Under *McDonnell Douglas*, Ms. Stephens and Ms. Vaught must first establish a prima facie case of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000)). If successful, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id*. (*citing Allen*, 545 F.3d at 394). Once this showing has been made, the burden of production shifts back to the plaintiff who must show that the employer's explanation was merely pretext for intentional discrimination. *Id*. Importantly, the burden of production shifts throughout the analysis, but the burden of persuasion remains on the plaintiff to "demonstrate that age [or gender] was the 'but-for' cause of their employer's adverse action." *Id*. (*citing Geiger*, 579 F.3d at 620; *Gross v. FBL Financial Services Inc.*, 557 U.S. 167, 623 n. 4 (2009)) (internal quotations omitted).

6

To establish a prima facie case of age or sex discrimination, Ms. Stephens and Ms. Vaught must demonstrate at the time of termination: (1) they belonged as members of a protected class or, in the case of age discrimination, over the age of 40; (2) General Electric subjected them to an adverse employment action; (3) they were qualified for the position they held; and (4) circumstances exist that support an inference of discrimination. *Blizzard*, 698 F.3d at 283; *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 769 (6th Cir. 2006). In the context of age discrimination the fourth element requires a showing that the plaintiff was replaced by someone substantially younger. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

General Electric does not dispute that Ms. Stephens and Ms. Vaught have met the first three criteria for a prima facie case of discrimination. As women, both Ms. Stephens and Ms. Vaught are members of a protected class. *Vincent*, 514 F.3d at 494 (*citing Valentine-Johnson v. Roche,* 386 F.3d 800, 814 (6th Cir. 2004)). General Electric also recognizes that both Ms. Stephens and Ms. Vaught were fifty-eight years old at the time of their termination in 2014. [R. 53-1 at 9.] Second, "[a]n employer's decision to discharge an employee is a classic example of an adverse employment action." *Id. (citing Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868 n. 2 (6th Cir. 2007)). Here, General Electric does not dispute Ms. Stephens and Ms. Vaught were placed on layoff status in 2014. [R. 53-1 at 9.] Third, General Electric agrees that both Ms. Stephens and Ms. Vaught were qualified to work as Standardizers ("R4 classification) when they were placed on layoff status in 2014. [R. 53-1 at 7.] In fact, General Electric admits Ms. Stephens was qualified, not only in the R4 position which she held at the time of the layoff, but also the QC Control Systems Clerk ("R10 classification"). *Id.* Additionally, General Electric provided work histories of both Ms. Stephens and Ms. Vaught. These do not show any

7

inadequacies in their qualifications, any disciplinary measures taken against them, or any complaints concerning their work. [R. 53-6; R 53-7]. That brings us to the fourth prong: circumstances that support an inference of discrimination. *Blizzard*, 698 F.3d at 283; *Vincent*, 514 F.3d at 494; *Vickers*, 453 F.3d at 769.

## C

General Electric's Motion for Summary Judgment does not address the traditional standard under *Grosjean* and *Blizzard*. Instead, General Electric presumes its personnel action was a "reduction in force" (RIF). [*See generally*, R. 53-1.] If Ms. Stephens and Ms. Vaught were terminated as part of a RIF, then they need to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). This is a heightened standard.

But Ms. Stephens and Ms. Vaught dispute General Electric's classification of the termination events as a RIF. They claim that the creation of additional R4/R5 positions takes this case out of a RIF analysis. [R. 80 at 16.] However, a RIF occurs whenever an employer eliminates one or more positions within the company. *Barnes*, 896 F2d at 1465. Documents show that ten positions were eliminated, and of those ten positions, four employees were eligible for early retirement or voluntary layoff, resulting in only six potential employee terminations. [R. 54 at 2.] Even if no terminations occurred, a RIF only requires that the positions themselves are eliminated. Termination of employees is not a prerequisite of a RIF. *Wilson v. Ohio*, 178 F. App'x 457, 465 (6th Cir. 2006).

The positions eliminated here were four R4 positions, one R10 position, one R12 position, one R16 position, one R17 position, one R21 position, and one R23 position. [R. 54 at

8

6.] After these positions were eliminated, General Electric created two additional R4/R5 positions, bringing the total number of R4/R5 positions to six, and General Electric filled the vacancies in this category with at least three employees with less seniority than Ms. Stephens and Ms. Vaught. [R 80-8 at 35.] Following discussions with the union, General Electric immediately reduced the six R4/R5 positions and created three R4 positions and three R5 positions. *Id.* at 36. Regardless of these changes, Ms. Stephens and Ms. Vaught do not contest that GE changed the company structure, resulting in the elimination of one R4 position, one R10 position, one R12 position, one R16 position, one R17 position, one R21 position, and one R23 position. Because *Barnes* only requires one position to be eliminated for an RIF to occur, General Electric's employment changes in August 2014, as a matter of law, must be classified as a "reduction in force." Ms. Stephens and Ms. Vaught are therefore subject to the heightened standard to establish a prima facie case for discrimination. *Barnes*, 896 F.2d at 1465.

### D

Ultimately, Ms. Stephens and Ms. Vaught fail to establish a prima facie case for employment discrimination. To support an inference of discrimination under the traditional standard, they must show they were replaced by General Electric with someone substantially younger. *Grosjean*, 349 F.3d at 336; *Blizzard*, 698 at 283. An age difference of ten years or more is generally considered "significant" for the purposes of age discrimination. *Grosjean*, 349 F.3d at 336. An age difference of six years or less is not "significant;" age differences between six and ten years can be "significant," but are not presumed to be either "significant" or "not significant." *Id.* at 340. A terminated employee is not "replaced" if another employee is assigned to perform the plaintiff's duties in addition to already existing duties, or if the plaintiff's

9

duties are redistributed among other employees who are already performing related work. *See Barnes*, 896 F.2d at 1465.

Here, Ms. Stephens and Ms. Vaught are unsure of who exactly shouldered their R4 duties after the August 2014 RIF. In their response, they claim either Burris and Petrey (who filled the newly created R4/R5 positions) or "some combination of Gilmore, Linkes, Pitman, and/or Irvine," all of whom were retained on a temporary basis for the R4/R5 and R5 positions, "replaced" them. [R. 80 at 18.] All six of these retained employees were male, which supports their claims for gender discrimination. However, of these six men, only Irvine (age 31) and Linkes (age 44) are presumed to be of a significant age difference to support a claim for age discrimination, while Gilmore (age 49) falls in the gray area between six and ten years' difference. [*Supra* I.A.]

As for Petrey, he moved from an R12 position to an R4/R5 position in August 2014, without retaining his R12 duties. [R. 80-13.] Reassigning an existing employee is analogous to hiring a new employee to cover the duties of the terminated employee. *See Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir. 1997) (holding that promoting a part-time employee to full-time status constituted "replacement" even if the duties of the retained employee never change). Drawing reasonable inferences in favor of the non-moving party, Petrey's employment records seem to establish enough dispute of fact as to whether Petrey "replaced" Ms. Stephens and Ms. Vaught and took over their duties, even though Petrey's resulting job title was not the same as their former positions. (*See Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

On the other hand, Burris moved to an R4/R5 position in 2013, well before the August 2014 RIF. [R. 80-12.] A terminated employee is not "replaced" if the plaintiff's duties are

redistributed among other employees who are already performing related work. *Barnes*, 896 F.2d at 1465. Even if Burris assumed their R4 duties in August 2014 as a result of the RIF, he was already performing the R4 duties as part of his R4/R5 position; and thus, Burris could not have "replaced" them as a matter of law. *See id.*

Similarly, Linkes served in a plant utility (R5) position beginning in 2013. [R. 80-11 at 2.] The record is unclear as to whether Linkes remained in the R5 position or if he moved into the R4/R5 position after the August 2014 RIF. However, even assuming, as Ms. Stephens and Ms. Vaught allege that Linkes moved into an R4/R5 position, taking over their duties, Linkes retained his original R5 duties in addition to their R4 duties. And, as noted, a terminated employee is not "replaced" if another employee is assigned to perform the plaintiff's duties in addition to already existing duties. *Barnes*, 896 F.2d at 1465. Thus, because Linkes maintained his R5 duties, at least from 2013 through 2015, he would take on Ms. Stephens's and Ms. Vaught's R4 duties in addition to his own; and thus, Linkes could not have "replaced" them as a matter of law. *See id.*

Gilmore presents a slightly different circumstance. He served as an APO and/or PO employee (R12 and R18 positions) prior to the August RIF. [R. 80-11 at 1.] General Electric indicates that Gilmore was retained on a temporary basis for both R5 and R4/R5 positions after the August RIF. [R. 53-1 at 10.] While records show Gilmore returned to the APO position, at least by 2015, General Electric does not allege that Gilmore retained his R12 duties while performing as a temporary R5 or R4/R5. *Id.* Once again, reassigning an existing employee is analogous to hiring a new employee to cover the duties of the terminated employee. *See Tinker*, 127 F.3d at 522. By performing the R4/R5 position, Gilmore would inevitably be performing R4 duties and therefore taking over Ms. Stephens's and Ms. Vaught's additional R4 duties if

11

necessary. Drawing reasonable inference in favor of the non-moving party, Gilmore's employment records establish enough dispute of fact as to whether Gilmore "replaced" Ms. Stephens and Ms. Vaught and took over their duties, even though Gilmore's resulting job title was not the same as their former positions. (*See Logan*, 259 F.3d at 566 (citing *Liberty Lobby*, 477 U.S. at 255)).

Next comes Pitman. He served in a plant utility (R5) position beginning in 2011. [R. 80-11 at 4.] Evidence provided is unclear as to whether Linkes remained in the R5 position or if he moved into the R4/R5 position after the August 2014 RIF. However, even assuming, as Ms. Stephens and Ms. Vaught allege, Pitman moved into an R4/R5 position, taking over their duties, Pitman retained his original R5 duties in addition to Ms. Stephens's and Ms. Vaught's R4 duties. So, once again, Ms. Stephens and Ms. Vaught were not "replaced" because another employee was assigned to perform their duties in addition to already existing duties. *Barnes*, 896 F.2d at 1465. Thus, because Pitman maintained his R5 duties, at least from 2013 through 2015, he merely took on their R4 duties in addition to his own; and thus, Pitman could not have "replaced" them as a matter of law. *See id.*

Finally, Irvine also served as an APO/PO employee (R12 and R18 positions) prior to the August RIF. [R. 80-11 at 3.] General Electric indicates Irvine was retained on a temporary basis for both R5 and R4/R5 positions after the August RIF. [R. 53-1 at 10.] While records show Irvine returned to the APO position, at least by 2015, General Electric does not allege that Irvine retained his R12 duties while performing as a temporary R5 or R4/R5. *Id.* Reassigning an existing employee is analogous to hiring a new employee to cover the duties of the terminated employee. *See Tinker*, 127 F.3d at 522. Drawing reasonable inference in favor of the non-moving party, Irvine's employment records seem to establish enough dispute of fact as to

12

whether Irvine "replaced" Ms. Stephens and Ms. Vaught and took over their duties, even though Irvine's resulting job title was not the same as their former positions. (*See Logan*, 259 F.3d at 566 (citing *Liberty Lobby*, 477 U.S. at 255)).

To summarize, out of the six men Ms. Stephens and Ms. Vaught identifies, only Petrey, Gilmore, and Irvine could have possibly "replaced" them. All three were male, thus supporting an inference of gender discrimination. However, Petrey, at age 54, was only four years younger than Ms. Stephens and Ms. Vaught, and therefore was not "significantly" younger to support an inference of age discrimination. *Grosjean*, 349 F.3d at 340. Gilmore, at age 49, was nine years younger, and, under *Grosjean*, was probably young enough to have a "significant" age difference from Ms. Stephens and Ms. Vaught. *See id.* at 339. Irvine, at age 31, is seventeen years younger than Ms. Stephens and Ms. Vaught and definitely young enough to support an inference of age discrimination. *Id.* at 340.

However, this was a reduction in force. Consequently, for a prima facie case, Ms. Stephens and Ms. Vaught must provide additional evidence that is either direct, circumstantial, or statistical, indicating the employer singled out and terminated the plaintiff for "impermissible reasons." *Barnes*, 896 F.2d at 1465. Ms. Stephens and Ms. Vaught only attempted to provide circumstantial evidence, without offering any direct or statistical evidence [R. 80 at 19]. Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F3d at 620.

Ms. Stephens and Ms. Vaught introduced evidence showing that younger, male employees were retained during the August RIF at General Electric in R4/R5 positions, a job they seem to argue is comparable to their former R4 positions. However, simply because

younger employees are retained during a RIF is not sufficient evidence to support a prima facie case of discrimination. *Adams v. Proto Plastics, Inc.*, 151 Fed. App'x 468, 470 (6th Cir. 2005). Likewise, merely because all eliminated employees were women does not establish a prima facie case of gender discrimination. *See Slapak v. Tiger Management Group, LLC*, 594 Fed. App'x 290, 295 (6th Cir. 2014). Ms. Stephens and Ms. Vaught must do more than show that all six terminated employees were women over the age of 40.

One part to a prima facie case consists of showing that Ms. Stephens and Ms. Vaught possessed "qualifications superior to those of a younger coworker working in the same position as the plaintiff." *Barnes,* 896 F.2d at 1466. However, this determination cannot be "subjective" based on whether the terminated employees feel as though they are better qualified. *Copeland v. Regent Electric*, 499 Fed. App'x 425, 434 (6th Cir. 2012). Ms. Stephens and Ms. Vaught argue the relative qualifications for R4/R5 positions were seniority and a willingness and ability to serve in such positions. [R. 80 at 21.] Regardless of their willingness to train into those positions, Ms. Stephens and Ms. Vaught admit they never received such training and had never worked as an R5 employee. [R. 53-3 at 49, 58; R. 53-4 at 19–20.] It is not sufficient for them to show their willingness to train into the job, nor is it enough for them to show they were as qualified as the men who remained in the company. Ms. Stephens and Ms. Vaught must be able to show they possessed *superior* qualifications to those of their younger male coworkers. *Barnes,* 896 F.2d at 1466. They have not shown this. Out of the three men who could have replaced them (Petrey, Gilmore, and Irvine), all three were trained and had experience working in the R5 position while they did not. Even drawing reasonable inferences in favor of Ms. Stephens and Ms. Vaught, under *Barnes*, because they cannot prove any objective qualifications superior to those held by their replacements, Ms. Stephens and Ms. Vaught fail to establish a

prima facie case for discrimination against General Electric.

E

Even if Ms. Stephens and Ms. Vaught were able to establish a prima facie case against General Electric, they have provided no evidence that General Electric's reasons for terminating employment were pretextual. Once a plaintiff is successful in establishing a prima facie case for discrimination, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (*citing Allen v. Highlands Hospital Corp.*, 545 F.3d 287, 394 (6th Cir. 2008). After this showing has been made, the burden of production shifts back to the plaintiff who must show that the employer's explanation was merely pretext for intentional discrimination. *Id.*

In the case of work force reductions, the most common legitimate reason to terminate employment is the RIF itself. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). General Electric explains the company needed to reduce its workforce due to declining demand. [R. 53-1.] Thus, by providing extensive evidence as to the August 2014 reduction in force [*see* R. 54], General Electric could satisfy their burden of providing a nondiscriminatory reason. Ms. Stephens and Ms. Vaught would then have to establish that the reduction in force was pretextual for some other discriminatory purpose. *Schoonmaker*, 595 F.3d at 264. To do so, they must show General Electric's proffered reasons either (1) had no basis in fact, (2) did not actually motivate General Electric's discharge of Ms. Stephens and Ms. Vaught, or (3) were insufficient to motivate General Electric's discharge of Ms. Stephens and Ms. Vaught. *Allen*, 545 F.3d at 396 (*citing Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083–84 (6th Cir. 1994)).

Ms. Stephens and Ms. Vaught cannot show that General Electric's reasons had no basis

in fact. General Electric did conduct a reduction in force in August of 2014. [R. 54.] The Somerset plant where they worked eventually closed on August 11, 2017, after years of other reductions in force [*see* R. 54, R. 55, R. 56, and R. 57] still could not sustain the drop in demand for General Electric's product. (*See* Bill Mardis, *Somerset GE plant's doors close for good today*, Commonweal Journal, Aug. 11, 2017, http://www.somerset-kentucky.com/news/somerset-ge-plant-s-doors-close-for-good-today/article_b3e0cefe-7e13-11e7-ab8a-e329bc5bf565.html.)

Furthermore, General Electric selected Ms. Stephens and Ms. Vaught for termination because they were not qualified to fill the open positions. *Supra* II.D. Ms. Stephens and Ms. Vaught are unable to show that these reasons had no factual basis. They have provided no evidence that the plant was not downsizing prior to ultimate closure, nor have they provided factual evidence to show they were trained or had sufficient experience for the open positions. Nor can they point to evidence showing these circumstances did not motivate General Electric's termination of them or that these reasons are in any way insufficient. While in some instances, a defendant's changing explanations may evidence pretext (*see Fox v. Certainteed Corp.*, 198 F.3d 245 (6th Cir. 1999)), this is not the case here. Neither Ms. Stephens nor Ms. Vaught allege retaliation, and the disparities in evidence do not raise any material issue in the case, rather these disparities relate to whether they were offered training after the August 2014 RIF. [R. 80 at 32–39.] Even if they were offered training for the R5 position, General Electric was downsizing the Somerset plant due to decreased consumer demand and neither Ms. Stephens nor Ms. Vaught were as qualified as other, retained employees to fill the vacant positions in the remaining workforce, much less *more* qualified than the retained employees. Thus, even if they could establish a prima facie case for discrimination, they cannot meet the burden of establishing

16

General Electric's reasons for terminating their employment to be pretextual.

### III

The decision to close an industrial plant always presents difficult consequences for the company, the town where the plant was located, and most of all, the plant's former employees. The General Electric plant in Somerset, Kentucky experienced an RIF in August of 2014, and worsening market conditions ultimately led to the plant shuttering its doors in 2017. The termination of Ms. Stephens and Ms. Vaught as employees of General Electric was a result of this RIF, not because of any impermissible discrimination by General Electric. For the foregoing reasons and being otherwise sufficiently advised, the Court hereby **ORDERS** that the Defendants' Motion for Summary Judgment [R. 53] is **GRANTED.** Judgment in favor of Defendants shall be entered contemporaneously herewith.

This 7th day of November, 2017.

Gregory F. Van Tatenhove
United States District Judge